UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUINTIN CONLEY,

    Plaintiff,

v.                                                     Case No. 1:14-cv-188
                                                    Hon. Robert J. Jonker

HARRIET SQUIRE, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motions for summary judgment filed by defendants R.N. Diane Deitrich, R.N. Susan Havens and R.N. Daniel Newhall (docket no. 19), defendant R.N. Cindy Cronkright (docket no. 23), and defendants Harriet Squier, M.D., Jeffrey Bomber, M.D., Rickey Coleman, M.D., Barbara Bien, P.A., and Kent Filsinger, P.A. (docket no. 26).

**I.**     **Plaintiff's complaint**

Plaintiff's claims involve nine defendants who treated him at three different correctional facilities. Plaintiff named the following defendants in his "verified" complaint: Dr. Harriet Squier (Regional Medical Officer);[1] Dr. Jeffrey Bomber; R.N. Cindy L. Cronkright (employed at the Ojibway Correctional Facility (OCF)); P.A. Barbara Bien (employed at the Muskegon Correctional Facility (MCF)); Dr. Rickey J. Coleman (employed at the Carson City Correctional Facility (DRF)); R.N. Diane V. Deitrich (employed at DRF); R.N. Susan A. Havens

---

[1] Plaintiff's complaint refers to this defendant as "Harriet Squire."

(employed at DRF); R.N. Daniel L. Newhall (employed at DRF); and P.A. Kent D. Filsinger (employed at DRF). *See* Compl. at ¶¶ 3-11 (docket no. 1 at pp. ID## 2-3).

Plaintiff set forth the following allegations in his complaint. On July 22, 2010, while plaintiff was incarcerated at DRF, R.N. Newhall evaluated him for sharp pain in the scrotum. *Id.* at ¶ 13 (p. ID#4). "Plaintiff reported that pain started in scrotum and radiated to the suprapubic region, with a full/pressure feeling in suprapubic region" and Newhall noted a small mass next to the right testicle. *Id.* The same day, Dr. Coleman evaluated plaintiff and also found a mass on the epididymis of the right testicle. *Id.* at ¶ 14. Dr. Coleman determined this mass was an "epididymal cyst" and prescribed Ibuprofen as treatment. *Id.*

On July 23, 2010, plaintiff informed R.N. Deitrich of extreme pain in testicular and suprapubic regions when sneezing. *Id.* at ¶ 15. Deitrich advised plaintiff to continue taking Ibuprofen. *Id.* Plaintiff requested additional pain management medication from R.N. Havens. *Id.* at ¶ 16. However, Havens "refused to provide any pain medication" and "told [p]laintiff that he is required to stock his own medications from the prisoner store." *Id.*

On July 26, 2010, plaintiff informed R.N. Newhall that he was still experiencing extreme pain in his testicular area, that he had not been able to eat for a few days and that the Ibuprofen was ineffective to treat the pain. *Id.* at ¶ 17. However, Newhall did not order any further treatment. *Id.*

On July 27, 2010, P.A. Filsinger evaluated plaintiff for continuing testicular pain, located inside left testicle with pain radiating to right groin. *Id.* at ¶ 18. P.A. Filsinger recommended that plaintiff continue with the treatment prescribed by Dr. Coleman and took no further action. *Id.*

2

On August 5, 2010, plaintiff's complaints of sharp, worsening pain in his left scrotum and right testicle were reported to Dr. Coleman. *Id.* at ¶ 19. The doctor responded that plaintiff "may take otc and meds for an epididymal cyst." *Id.* at ¶ 19 (p. ID# 5).

Plaintiff makes no allegations with respect to his condition for over three months (i.e., from August 6, 2010 through November 16, 2010). At some point during this time period, plaintiff was transferred to OCF, where on November 17, 2011, he reported continuing pain to health services. *Id.* at ¶ 20. On or about that date, non-party Dr. Asche determined that plaintiff had a "readily identifiable 'left inguinal hernia, with involvement into left hemi-scrotum.'" *Id.* Dr. Asche requested approval from Dr. Squier for a general surgeon consult, which was granted on November 18, 2011. *Id.* After consultation with a general surgeon, Dr. Asche explained to plaintiff that the "left scrotal entity" was not confirmed by the surgeon as an inguinal hernia, and that the surgeon wanted scrotal "u-sound, and CT scan, and return visit." *Id.* at ¶ 21.

On December 19, 2011, Dr. Asche re-examined plaintiff, still found what he believed to be an inguinal hernia, and submitted a request for a "u-sound" of scrotum as requested by the surgeon. *Id.* at ¶ 22. Dr. Squier responded to the request with an Alternative Treatment Plan as follows "ATP: please have Dr. Bomber review case, examine patient, and determine what workup if any needs to be pursued." *Id.* Dr. Asche sent an e-mail to Dr. Bomber (the "northern region RMD for Corizon") requesting his input on the inguinal hernia. *Id.* at ¶ 23. However, Dr. Bomber did not perform the requested examination to determine what type of workup was required. *Id.*

On January 14, 2012, plaintiff "presented his complaints of pain after walking too much or with quick, sudden movements, with information of the history of the inguinal hernia." *Id.* at ¶ 24. However, R.N. Cronkright failed to treat the inguinal hernia. *Id.*

Plaintiff makes no allegations regarding his condition over the next 18 months. At some point prior to June 10, 2013, plaintiff was transferred to MCF. On that date, plaintiff "complained that the hernia sticks out after eating, that pain has been aggravated recently by allergies and sneezing, and has no medication for pain." *Id.* at ¶ 25. P.A. Bien, "recognized the symptoms as that of hernia, but recommended 'if pain doesn't go away, gets worse, or hernia is nonreducable' for [p]laintiff to notify health care." *Id.*

Approximately six weeks later, on July 21, 2013, "[p]laintiff was taken to health care in a wheelchair with severe burning gastrointestinal pain" and "was unable to stand upright, walked slowly, and was hunched due to pain." *Id.* at ¶ 26 (pp. ID## 5-6). During the examination, "[p]laintiff was biting his wrist because the pain was severe." *Id.* at ¶ 26 (p. ID# 6). On July 23, 2013, P.A. Bien treated plaintiff's abdominal pain with Zantac. *Id.* at ¶ 27.

Approximately seven weeks later, on September 9, 2013, P.A. Bien changed the medication to Protonix to treat plaintiff's "epigastric pain." *Id.* at ¶ 28. The next month, on October 9, 2013, P.A. Bien discontinued the Protonix and recommended that plaintiff rest and "avoid aggravating activities." *Id.* at ¶ 29. Plaintiff alleged that from October 9, 2013, through February 23, 2014 (the date of his complaint), "[t]here has been no further treatment for [p]laintiff's inguinal hernia" and that "[d]efendants have refused to authorize the needed surgery to alleviate the pain that is being endured by [p]laintiff." *Id.* at ¶¶ 30-31.

Based on these facts, plaintiff alleged that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *Id.* at ¶ 33. Specifically, defendants refused "to initiate, approve, or provide medical treatment or procedures for a serious medical condition which has caused continuing pain, problems with stools and urination, pain in

bath his testicles, deteriorating health and energy, difficulty in breathing, and what feels like sporadic heart palpatations." *Id.* at ¶ 34. Plaintiff seeks declaratory relief, compensatory relief, and punitive damages in the amount of $ 900,000.00 ($100,000.00 against each defendant). *Id.* at p. ID# 8.

## II. Summary judgment standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants seek summary judgment on plaintiff's claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

5

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, plaintiff has not filed a response to any of the three pending motions for summary judgment (docket nos 19, 23 and 26).  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion."  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).  However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing

investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### III. Discussion

### A. Exhaustion of administrative remedies

Defendants seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claim. In addition, some of plaintiff's claims are barred by the statute of limitations. The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### B. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### C. Plaintiff's claims arising at DRF against Dr. Coleman, P.A. Filsinger, R.N. Newhall, R.N. Deitrich and R.N. Havens.

Plaintiff's claims against Dr. Coleman, P.A. Filsinger, R.N. Newhall, R.N. Deitrich and R.N. Havens arose while he was incarcerated at DRF. Defendants have presented evidence that plaintiff filed only one Step III grievance appeal since May 2009, that being grievance no. DRF-10-07-1855-12d3 ("1855"). This grievance involved incidents on July 22 and 23, 2010, when plaintiff

8

experienced discomfort and increasing pain and complained that he did not receive treatment on an emergency basis. The only person named in the grievance is non-party resident unit officer Stephens. Plaintiff complained that he saw a doctor who prescribed ibuprofen and wanted to check up on plaintiff within a week. Plaintiff complained that the ibuprofen did not provide relief, and that nurses denied additional medication. Although plaintiff saw a doctor and at least two nurses during this time span, he complained that the medical staff refused to treat him on an emergency basis. *See* MDOC Prisoner Step III Grievance Report (docket no. 20-3 at p. ID# 66); Grievance no. 1855 (docket no. 20-4 at p. ID# 72). In the response dated August 2 and 3, 2010, the respondents stated that plaintiff was evaluated multiple times for the same medical issue, that he saw medical providers twice, that the medical providers reported no medical indication for a follow up appointment, and that plaintiff was educated to purchase over the counter medication as needed at the prisoner store. *Id.* The grievance was denied because "[d]isagreement with the plan of care does not support denial of care." *Id.* Plaintiff appealed to Step II, where it was denied. *Id.* at p. ID## 70. While plaintiff later filed a Step III appeal, it was denied as untimely. *Id.* at p. ID# 68.

While plaintiff's complaint names five medical professionals at DRF (Dr. Coleman, P.A. Filsinger, R.N. Deitrich, R.N. Havens and R.N. Newhall), grievance no. 1855 does not name any of these individuals as required by Policy Directive 03.02.130 ¶ R. Furthermore, plaintiff's Step III grievance was denied as untimely. Viewing this evidence in the light most favorable to the non-movant (plaintiff), there is no factual basis to establish that plaintiff properly exhausted his claims against defendants Coleman, Filsinger, Deitrich, Havens or Newhall. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants Coleman, Filsinger, Deitrich, Havens, and Newhall are entitled to summary judgment for lack of proper exhaustion.

### D.     Plaintiff's claims arising at OCF against Dr. Bomber, Dr. Squier and R.N. Cronkright

Plaintiff's claims against Dr. Bomber, Dr. Squier and R.N. Cronkright arose while he was incarcerated at OCF from approximately November 17, 2011 through January 14, 2012. As discussed, the only grievance which plaintiff appealed through Step III was grievance no. 1855, which involved incidents that occurred at DRF in July 2010. There is no evidence that plaintiff filed a grievance against Dr. Bomber, Dr. Squier or R.N. Cronkright related to his medical treatment while incarcerated at OCF. Viewing this evidence in the light most favorable to the non-movant (plaintiff), there is no factual basis to establish that plaintiff properly exhausted his claims against defendants Bomber, Squier or Cronkright. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants Bomber, Squier and Cronkright are also entitled to summary judgment for lack of proper exhaustion.

### E.     Plaintiff's claims arising at MCF against P.A. Bien.

Plaintiff's claims against P.A. Bien arose while he was incarcerated at MCF from approximately June 10, 2013 through October 9, 2013. As discussed, the only grievance which plaintiff appealed through Step III was grievance no. 1855, which involved incidents that occurred at DRF in July 2010. There is no evidence that plaintiff filed a grievance against P.A. Bien related to his medical treatment while incarcerated at OCF. . Viewing this evidence in the light most favorable to the non-movant (plaintiff), there is no factual basis to establish that plaintiff properly exhausted his claims against defendant Bien. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Defendant Bien is entitled to summary judgment for lack of proper exhaustion.

### IV.    Statute of limitations

Defendants Dr. Coleman, P.A. Filsinger, R.N. Deitrich, R.N. Havens and R.N. Newhall also contend that plaintiff's claims against them are untimely. As discussed, plaintiff did not properly exhaust any claims against these five defendants which arose at DRF during July 2010. However, even if grievance no. 1855 had properly exhausted these claims, plaintiff's complaint was time barred. The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10). *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). Here, plaintiff received the response to his Step III grievance on January 12, 2011. *See* Grievance No 1855 (docket no. 20-4 at p. ID# 68). Plaintiff should have filed his complaint against defendants Coleman, Deitrich, Havens, Newhall and Filsinger within three years of that date. However, plaintiff did not file the present action until February 25, 2014, approximately six weeks too late. Defendants Coleman, Deitrich, Havens, Newhall and Filsinger would also be entitled to summary judgment on this ground.

## V. Recommendation

For the reasons set forth above, I respectfully recommend that the unopposed motions for summary judgment filed by defendants R.N. Deitrich, R.N. Havens and R.N. Newhall (docket no. 19), defendant R.N. Cronkright (docket no. 23), and defendants Dr. Squier, Dr. Jeffrey Bomber, Dr. Coleman, P.A. Bien, and P.A. Filsinger (docket no. 26) be **GRANTED** and that this action be **DISMISSED**.

Dated: February 3, 2015           /s/ Hugh W. Brenneman, Jr.
                     HUGH W. BRENNEMAN, JR.
                     United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).